

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2003

# Sonneberg v. USA

Precedential or Non-Precedential: Non-Precedential

Docket 01-2067

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Sonneberg v. USA" (2003). *2003 Decisions*. Paper 668.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/668

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 01-2067
_____

MILTON SONNEBERG,

Appellant

v.

UNITED STATES OF AMERICA

_____

On Appeal from the United States District Court
for the District of New Jersey

District Court Judge: The Honorable Nicholas H. Politan
(D.C. Civil No. 00-cv-01000)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 14, 2003

Before: ROTH, FUENTES, Circuit Judges, and ALDISERT, Senior Circuit Judge

(Opinion Filed: April 4, 2003)
_____

OPINION OF THE COURT
_____ FUENTES, Circuit Judge:

Milton Sonneberg appeals the District Court's denial of his petition for collateral relief pursuant to 28 U.S.C. 2255. Sonneberg was convicted of conspiracy to commit wire and mail fraud, wire fraud, and multiple counts each of mail fraud and interstate transportation of money obtained through fraud. Sonneberg contends in his Section 2255 petition that the Supreme Court's decision in Neder v. United States, 527 U.S. 1 (1999), is an "intervening change in law" that establishes that he has been convicted for offense conduct that is not a crime. We disagree. For the reasons that follow, we will affirm the District Court's denial of Sonneberg's Section 2255 petition.

I.  BACKGROUND

Sonneberg was indicted by a federal grand jury on April 23, 1995, along with Irwin H. Block (a/k/a "Sonny Bloch"), James Barschow, Joseph Glenski, and Bruce Schroeder. Sonny Bloch pleaded guilty to eight of the thirty-five counts in the indictment on September 18, 1996. A federal grand jury returned a thirty-count superceding indictment against the remaining four defendants on December 18, 1996. Barschow, Glenski, and Schroeder pleaded guilty to nine counts on April 9, 1997. Another thirty-count superceding indictment was filed against Sonneberg on April 23, 1997. In that indictment, Sonneberg was charged with the following offenses: (1) conspiracy to commit wire fraud and interstate transportation of money obtained through fraud in violation of 18 U.S.C. 371; (2) conspiracy to commit mail fraud and interstate transportation of money obtained through fraud in violation of 18 U.S.C. 371; (3) wire fraud in violation of 18 U.S.C. 1343; (4) twenty-three counts of interstate transportation of money obtained through fraud in violation of 18 U.S.C. 2314; and (5) four counts of mail fraud in violation of 18 U.S.C. 1341.

A trial commenced on May 1, 1997. In brief, the facts established at trial show that Sonneberg, Bloch, Barschow, Glenski, and Schroeder conspired to market limited liability

company ("LLC") interests in a series of wireless cable television ventures and in a proposed radio-station network. The conspirators' sales pitches promised potential investors unparalleled opportunities in the cutting-edge technology of wireless cable television systems and a network of independent broadcasters owned by "Bloch Broadcasting." The problem with the sales pitches was that there were no viable business ventures behind them. In fact, the wireless cable systems being promoted did not have any of the resources, such as channels, sites, and FCC licences, necessary to make them operable, much less profitable. And "Bloch Broadcasting" was a shell company with no assets. Nonetheless, the promoters raised millions of dollars from investors. Approximately forty percent of the investor money was paid to the conspirator-promoters in the form of sales commissions.

Sonny Bloch touted the sale of the LLCs on his nationally-syndicated radio program, "The Sonny Bloch Show." Bloch had 1.5 million listeners, and a good reputation as a consumer advocate. He agreed to endorse the sale of the LLCs and to vouch for the character of the promoters and the financial soundness of the ventures on his radio program. Despite the fact that Bloch was paid $2,000 per week for these endorsements, he made them sound personal rather than commercial. The conspirators used Bloch's radio program to develop leads to market the LLCs.

The conspirators also developed sales brochures for each of the LLCs they were promoting. The brochures included inflated financial projections and promised unrealistically high returns. The brochures misrepresented the true identity of the principal in the ventures, how the investment money would be allocated, the claims regarding the subscribership base for the ventures, and the ability of investors to participate in management decisions. The brochures also failed to disclose the prior criminal convictions and civil injunctions against certain of the conspirators, including Sonneberg.

On May 29, 1997, Sonneberg was convicted of all thirty counts alleged in the indictment. The District Court sentenced him to a 76 month prison term and ordered him to pay $5.2 million in restitution. Sonneberg appealed his conviction and sentence. On August 12, 1998, this Court affirmed his conviction and sentence by judgment order. United States v. Sonneberg, 164 F.3d 621 (3d Cir. 1998) (unpublished, non-precedential opinion). The Supreme Court denied his petition for certiorari on March 5, 1999.

On March 1, 2000, Sonneberg filed a petition for collateral relief pursuant to 28 U.S.C. 2255. While that petition was pending in the District Court, Sonneberg filed a petition for a writ of mandamus, which this Court denied on March 20, 2001. On April 6, 2001, the District Court denied his Section 2255 petition and denied him a certificate of appealability. The District Court denied Sonneberg's motion to reconsider.

On May 2, 2001, Sonneberg filed a timely notice of appeal and a request for a certificate of appealability from this Court. By order dated June 18, 2002, this Court granted Sonneberg a certificate of appealability limited to two of his claims: (1) that the District Court failed to instruct the jury on an element of the offense; and (2) that the government used an untenable theory of materiality, resulting in a conviction for offense conduct which is not a crime.

## II. ANALYSIS

The District Court had jurisdiction over Sonneberg's petition for collateral relief pursuant to 28 U.S.C. 2255. We have jurisdiction over his appeal pursuant to 28 U.S.C. 2255, 1291. We have plenary review over the District Court's denial of Sonneberg's Section 2255 petition. United States v. Lloyd, 188 F.3d 184, 186 (3d Cir. 1999).

28 U.S.C. 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

It is well settled that a petitioner generally may not relitigate issues that were decided adversely to him on direct appeal by means of a Section 2255 petition. See United States v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993). An exceptions exists, however, when there has been an "intervening change in law" affecting the claim previously decided adversely to the petitioner. See Davis v. United States, 417 U.S. 333 (1974).

The certificate of appealability sets forth two claims: (1) that the District Court faile

to instruct the jury on an element of the offense; and (2) that the government used an untenable theory of materiality, resulting in a conviction for offense conduct that is not a crime.  As Sonneberg's brief makes clear, these two claims collapse into one argument    that, prior to finding liability for mail or wire fraud on the basis of a material non-disclosure, a jury must first find that the defendant was under a duty to disclose, and that, in this case, District Court erred in failing to instruct the jury on this element of the offense.

This claim was previously litigated on direct appeal.  The first issue raised in Sonneberg's opening brief on direct appeal is "The Jury Was Improperly Permitted to Convict on the Basis of Nondisclosures."  (Supp. App. at p. 9) The arguments he made in support of the asserted error were as follows: (1) the mail and wire fraud statutes require a duty to disclose before imposing liability for a material omission; (2) because he had no duty to disclose his prior guilty plea and civil injunction, he was convicted on a legally insuffic theory; (3) the jury was never instructed that it had to find that he had a legal duty to disc and (4) reversal is required because the jury was permitted to find guilt on a legally impermissible and unconstitutional theory.  Id. at 9-10.  After considering Sonneberg's arguments, this Court affirmed his conviction and sentence.  United States v. Sonneberg, 164 F.3d 621 (3d Cir. 1998) (unpublished, non-precedential opinion).  Thus, this Court has already considered the central argument raised by Sonneberg in his Section 2255 petition namely,  that duty to disclose is a required element of the offenses of mail and wire fraud.

Despite the fact that we have already decided this issue adversely to Sonneberg, he urges us to reconsider it in light of Neder v. United States, 527 U.S. 1 (1999), which he asserts is an "intervening change in law."  We do not agree that Neder is an intervening change in law warranting relitigation of the issue already decided on direct appeal.  First, Neder is not a "change in law" because the two holdings of Neder do not pertain to the issue raised by Sonneberg.  In fact, Neder did not change the state of the law pertaining to whether duty to disclose is an element of the offenses of mail and wire fraud.  And second, Neder is not an "intervening" decision.

In Neder, the defendant had been "tried on charges of violating a number of federal criminal statutes penalizing fraud."  527 U.S. at 4.  The government conceded that the distric court erred in refusing to submit the issue of materiality to the jury with respect to the tax fraud charges.  Id.  The Supreme Court held that an instruction that omits an element of the offense, such as the instruction on tax fraud, does not necessarily render a criminal trial fundamentally unfair, and is thus subject to harmless-error analysis.  Id. at 4, 9.  The Court also held that "materiality is an element of the federal mail fraud, wire fraud, and bank frau statutes."  Id. at 4 (emphasis added).

In this case, the District Court properly instructed the jury that materiality is an element of the offenses of wire and mail fraud.  (App. at pp. 470-471)  Sonneberg does not contest the District Court's materiality instruction.  Instead, Sonneberg argues that the District Court failed to instruct the jury that duty to disclose is an element of the offenses wire and mail fraud when there is an allegation of a material non-disclosure.  Neither holding of Neder bears on that argument.

Sonneberg argues, however, that certain language in Neder supports his argument that the duty to disclose is an element of wire and mail fraud.  Specifically, he points to the Court's rejection of the government's argument that Congress "chose to unmoor the federal mail fraud statute from its common-law analogs . . . ."  Neder, 527 U.S. at 24.  Based on this statement, Sonneberg contends that, because duty to disclose was an element of common-law fraud, it must remain an element of the federal wire and mail fraud statutes.  Sonneberg overlooks the fact that in determining that the common-law element of materiality remains an element of federal wire and mail fraud, the Court observed that "the fraud statutes did not incorporate all the elements of common-law fraud," including the elements of reliance and damage.  Id. at 24-25 (emphasis in original).  Sonneberg also disregards the fact that the Court was only considering the element of materiality in the Neder decision.  Thus, the language cited by Sonneberg is not sufficiently precise to be an "intervening change in law" warranting relitigation of an issue previously decided on direct appeal.

Sonneberg also overlooks the substantial precedent establishing that duty to disclose is not always a required element of common-law fraud when there has been a material non-disclosure.  In a decision post-dating Neder, the Fourth Circuit recognized that "[t]he Supreme Court has recently articulated an outer boundary for the interpretation of the federal fraud statutes," but nonetheless found that "at common law, no fiduciary relationship, no statute, no other independent legal duty to disclose is necessary to make active concealment

actionable fraud - simple 'good faith' imposes an obligation not to purposefully conceal material facts with intent to deceive."  United States v. Colton, 231 F.3d 890, 898-900 (4th Cir. 2000) (citing Neder, 527 U.S. at 1; Strong v. Repide, 213 U.S. 419, 430 (1909); Tyler v. Savage, 143 U.S. 79, 98 (1892); Stewart v. Wyoming Cattle Ranche Co., 128 U.S. 383, 388 (1888)).  Other circuits have similarly recognized that the existence of a disclosure duty is not an essential element in all common law fraud cases.  See e.g. United States v. Autori, 212 F.3d 105, 119 (2d Cir. 2000); United States v. Kelpinger, 776 F.2d 678, 697-98 (7th Cir. 1985); United States v. Townley, 665 F.2d 579, 585 (5th Cir. 1982); United States v. Allen, 554 F.2d 398, 410 (10th Cir. 1977).  Thus, it is clear that both before and after the Neder decision, duty to disclose is not a required element of the common-law fraud offenses when there have been material non-disclosures.

Not only is Neder not an "change in law" with respect to Sonneberg's claim, it also is not "intervening."  Sonneberg's conviction and sentence were affirmed by this Court on August 12, 1998.  He petitioned the Supreme Court for certiorari, and raised the issue of whether "a defendant may be convicted under the federal mail and wire fraud statutes for failing to disclose certain information despite having no duty to disclose that information." (Supp. App. at p. 232)  Sonneberg's petition for certiorari was pending when the Court decided Neder.  In fact, Neder was decided on February 23, 1999, and the Court denied Sonneberg's petition on March 5, 1999.  Because Sonneberg's conviction was not final until his petition for certiorari was denied, see Kapral v. United States, 166 F.3d 565, 570 (3d Cir. 1999), the Neder decision was not "intervening."  Moreover, because Sonneberg's petition was still pending when Neder was decided, if the Court thought that Neder was relevant to Sonneberg's claims, the Court could have remanded his case for further proceedings.  Instead, the Court simply denied Sonneberg's petition.

In sum, because Sonneberg has not established an "intervening change in law," he is not entitled to relitigate the claim decided adversely to him on direct appeal.  Accordingly, we will affirm the District Court's denial of Sonneberg's Section 2255 petition.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.



/s/ Julio M. Fuentes
Circuit Judg